**FILED**

FEB 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08 0021 CW |
| Plaintiff, | DETENTION ORDER |
| v. | |
| ROBERT THOMAS DOYLE, | |
| Defendant. | |

For the reasons set forth below, the Court finds, after several hearings, that there are no terms and conditions on which Mr. Doyle could be released that would reasonably assure the safety of the community and his appearances in this litigation. The former finding is supported by clear and convincing evidence; the latter by a preponderance of the evidence. Therefore Mr. Doyle must be DETAINED.

The pending indictment charges Mr. Doyle with 34 counts of false claims – all based on tax returns he prepared or helped others prepare between the spring of 2004 and the summer of 2005. Each of the 34 tax returns allegedly included an intentionally made fraudulent claim for a refund. Each count exposes Mr. Doyle to a term of imprisonment of five years and a $250,000 fine.

1

As these charges raise no presumption under the Bail Reform Act, the Court released Mr. Doyle on an unsecured bond after his initial appearance in the morning of January 22, 2008. During the post-release interview that day with Pretrial Services, however, Mr. Doyle tested positive for cocaine and marijuana and admitted using both drugs. He also said he used methamphetamine, but later insisted that he was "just kidding" about using that drug.

In part because of the positive drug tests and the admissions of use, and in part because the interviewing Pretrial Services officer perceived some of Mr. Doyle's responses during the interview to be highly unusual, the Court reconvened on the afternoon of January 22, 2008, to re-visit the terms and conditions of Mr. Doyle's release and to admonish him about the importance of compliance, especially of not using controlled substances. After making it clear to Mr. Doyle that the Court's release order required him to abstain from use of controlled substances and to participate in good faith in substance abuse counseling and testing, the Court again released him on bond.

Pursuant to this Court's order, Mr. Doyle next appeared on February 1, 2008. After further considering his circumstances, including the post-bail report in which his landlord told Pretrial Services that Mr. Doyle "uses drugs every chance he gets, crack, weed," and in which Mr. Doyle admitted a long history of disabling mental health problems, the Court ordered Mr. Doyle to participate in a dual-diagnosis inpatient drug treatment program at Newbridge and to comply with all of its requirements. Specifically, the Court ordered Mr. Doyle to report to the Newbridge facility that same day (February 1, 2008) – informing him that he could leave the Newbridge building only with permission in advance from his Pretrial Services officer.

Despite this clear order (and condition on his release), Mr. Doyle did not participate in the inpatient program to which he was sent by Pretrial Services. The

Pretrial Services officer set up several appointments for Mr. Doyle, but he showed up only at one of them. During the intake interview on that one occasion he refused to answer any questions about his mental health history – even though the Court clearly had ordered him to participate in the program that would address both his substance abuse problem and his mental health needs. Because he would not provide any information about his mental health history (information that obviously would be necessary to develop an appropriate treatment regimen), the directors at Newbridge refused to admit him. After this initial failure, the Pretrial Services officer continued to try to make arrangements for Mr. Doyle to enter the substance abuse program, but Mr. Doyle continued to fail to cooperate.

After being advised of these failures, the Court issued a warrant for Mr. Doyle's arrest. Unbeknownst to the Court, Mr. Doyle was admitted to a local hospital for emergency psychiatric care sometime between February 9th and 11th. When his whereabouts were discovered, the Marshals arrested him at the hospital on February 14th and presented him to the Court on February 15th. At that appearance the Court revoked his bond and remanded him into custody. In part because of uncertainty about whether (or under what circumstances) the prosecution might be able to use information the defendant might divulge during a diagnostic interview, defense counsel asked that Mr. Doyle not be interviewed by a psychiatrist unless and until the defendant (through counsel) requested such an assessment. No such request has been made.

The events just described take on considerable significance (for the issues addressed here) when considered in light of several troubling aspects of Mr. Doyle's history. That history includes an admitted long-standing struggle with serious mental health issues. Mr. Doyle reports that he has been receiving mental health disability payments since 1987 – the year he was last employed (despite having earned a bachelor's degree and two master's degrees between the late 1960's and mid-1970's).

3

Mr. Doyle also reports (but his landlady denies) that is currently under the care of psychiatrists at the Berkeley Mental Health Clinic and receives psychiatric medication (perhaps irregularly) from the Sausal Creek Center in Oakland. He told Pretrial Services that he may have been diagnosed with bipolar disorder. Mr. Doyle's brother (John) told Pretrial Services that the defendant is "off," "not level," "illogical," and "goes batty" every once in a while.

Mr. Doyle has a comparably lengthy history of substance abuse. He admits that he began using marijuana in 1968 and has used it intermittently ever since. He says he first began using cocaine in 1987 (the same year he began receiving mental health disability payments) and that recently he has been using this drug on a weekly basis. As noted above, his landlord reports that he uses drugs "every chance he gets."

We assess the implications of this serious drug abuse problem against a backdrop that includes Mr. Doyle's past participation in at least two substantial treatment programs. He participated twice a week for a year in an out-patient program at the East Bay Recovery Center. More significantly, he says he completed a three year program sponsored by Newbridge (apparently sometime in the latter part of the 1990's or early 2000's). The Newbridge program includes a substantial period of residential treatment, followed by transitional support and therapy. Despite all this therapeutic help and work, Mr. Doyle has been wholly unable to control his addiction.

Mr. Doyle's lengthy criminal record, which also dates from the late 1980's, is further evidence of his lack of self-control and the unreliability of any promises he might make to abide by conditions of supervision. That record includes some 12 failures to appear (in state and federal court) and multiple revocations (and reinstatements) of terms of supervision.

Mr. Doyle suffered two arrests for battery in 1988 – and his first conviction (for grand theft) in 1989. He failed to appear on six separate occasions in connection

with that first conviction – and suffered three separate modifications of his sentence, each of which resulted in jail time.

In 1990 Mr. Doyle was convicted of being under the influence of a controlled substance. In 1994 he as convicted of robbery and sentenced to three years in state prison. In 1995 Mr. Doyle was convicted in this court (Northern District of California) of conspiracy to defraud the federal government. His sentence included drug abuse treatment. His performance while on supervision under that sentence was abysmal: his violations of terms and conditions resulted in the filing of at least eight separate Forms 12s over a five year period – and the imposition of several sets of sanctions, none of which seem to have had any material affect on his ability or willingness to comply.

Between 2003 and 2006 Mr. Doyle was the subject of four different actions by law enforcement, in one of which (during 2006) he failed to appear for court proceedings on at least two separate occasions and finally was convicted of presenting false identification to a police officer. Then in the fall of last year Mr. Doyle was arrested for possessing a narcotic controlled substance – apparently suffering a conviction for this offense in November of 2007 (there is some indication in the records that this matter may remain pending).

Stepping back from what we have described in the preceding paragraphs, what we see is three parallel sets of sustained instability: (1) recurring apparently serious mental health problems, (2) an uncontrolled substance abuse addiction, and (3) a relentless pattern of arrests, convictions, and failures under supervision. Each of these three reflections and sources of instability have persisted for twenty years – and all three have been manifest very recently. Against this background, Mr. Doyle's recent failures to comply with this Court's orders and conditions of release, coupled with his failure to proffer any significant security or to present any sureties who would make substantial commitments to support his release, compel the conclusion

that he remains out of control and that if he were released, even to an inpatient substance abuse program, there is a substantial likelihood that he would revert to use of drugs (a community-endangering crime) and fail to make his court appearances. It follows that the Court must ORDER MR. DOYLE DETAINED.

IT IS SO ORDERED.

Dated: 2/25/08

WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:

All parties, via ECF, 2 certified copies to Marshal, Pretrial, WDB, Stats, Sheilah